# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE CONFEDERATED TRIBES OF THE COLVILLE RESERVATION,<br><br>                      Plaintiff,<br>v.<br><br><br>THE UNITED STATES OF AMERICA,<br><br>                      Defendant. | No. 21-1664-EHM |

**PLAINTIFF'S REPLY TO THE UNITED STATES' SUPPLEMENTAL BRIEF**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................... 1

   A.   Plaintiffs Rely Upon the Same Statutes and Regulations Found to Create Money-Mandating Duties in *Mitchell II*, in addition to NIFRMA................................................................. 1

   B.   *Arizona v. Navajo* Does Not Alter the Legal Standard for Establishing Trust Duties.............. 5

   C.   NIFRMA Confirms and Specifies the United States' Fiduciary Duties ................................... 6

III. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) .................................................................................... 3

*Apache Tribe of Mescalero Reservation v. United States*, 43 Fed. Cl. 155 (1999) ............................ 5

*Arizona v. Navajo Nation*, 143 S. Ct. 1804 (2023) ....................................................................... 4, 8

*Confederated Tribes and Bands of the Yakama Nation v. United States,* 153 Fed. Cl. 676 (2021) .... 5

*Confederated Tribes of the Warm Springs Reservation v. United States*, 248 F.3d 1365 (Fed. Cir. 2001) .................................................................................................................................... 5

*Navajo Tribe of Indians v. United States*, 9 Cl. Ct. 336 (1986) ........................................................ 5

*Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) .......................................... 3

*The Blackfeet Tribe of the Blackfeet Reservation v. United States, Civ. No. 12-429L, ECF No. 62 (Fed. Cl. Aug. 21, 2015) (Order on Cross Motions for Summary Judgment)* ................................... 5

*United States v. Mitchell*, 445 U.S. 535 (1980) ............................................................................ 4, 5

*United States v. Mitchell*, 463 U.S. 206 (1983) ........................................................................... 1, 3, 8, 9

*United States v. Navajo Nation*, 537 U.S. 488, 493 (2003) ............................................................ 3, 4

*United States v. Obaid*, 971 F.3d 1095, 1102 (9th Cir. 2020) ......................................................... 3

**Statutes**

25 U.S.C. § 2 ............................................................................................................................. 9

25 U.S.C. § 5 ............................................................................................................................. 9

25 U.S.C. § 9 ............................................................................................................................. 9

25 U.S.C. § 13 ........................................................................................................................... 9

25 U.S.C. § 406 ...................................................................................................................... 7, 8

25 U.S.C. § 406(a) .................................................................................................................... 4

25 U.S.C. § 407 .................................................................................................................. 6, 7, 9

25 U.S.C. § 413 ......................................................................................................................... 9

25 U.S.C. § 415 .................................................................................................................... 9

25 U.S.C. § 466 ................................................................................................................. 7, 8

25 U.S.C. §§ 3101 et seq. ..................................................................................................... 6

25 U.S.C. §§ 3101-3120 ....................................................................................................... 9

25 U.S.C. § 3101(2) .............................................................................................................. 6

25 U.S.C. § 3102(1) .............................................................................................................. 7

25 U.S.C. § 3104(b) .............................................................................................................. 7

25 U.S.C. § 3120 ................................................................................................................... 6

## Regulations

25 C.F.R. § 163.1 .............................................................................................................. 7, 9

25 C.F.R. § 163.10(a) ........................................................................................................... 9

25 C.F.R. § 163.10(b) ........................................................................................................... 9

25 C.F.R. § 163.3(b)(1) ......................................................................................................... 9

## Other Authorities

60 Fed. Reg. 52250 (1995) ................................................................................................... 9

H. Rpt. 101-835 (101st Cong., 2d Sess. 1990) ................................................................. 7, 8

S. Rpt. 101-402 (101st Cong., 2d Sess. 1990) ..................................................................... 7

## I. INTRODUCTION

The Confederated Tribes of the Colville Reservation ("Tribes") respond to the United States' supplemental brief on *Arizona v. Navajo Nation*.

The United States' brief rehashes arguments already made in briefing on the pending motion to dismiss. The United States' core argument remains that *United States v. Mitchell*, 463 U.S. 206 (1983) ("*Mitchell II*") is wrongly decided, which Defendants now assert is confirmed by *Arizona v. Navajo Nation*. From that premise, the United States argues that the numerous Court of Federal Claims cases that rely upon *Mitchell II* to uphold claims by tribes against the United States for breach of trust from forestry mismanagement are also wrongly decided, and furthermore that the National Indian Forest Resources Management Act (NIFRMA) does not impose enforceable fiduciary duties.

The United States' argument is flawed. The Supreme Court does not *sub silentio* overrule its own jurisprudence. Rather than overrule *Mitchell II*, the Court in *Arizona v. Navajo Nation* relied upon the same analytical framework set forth in *Mitchell I* and *Mitchell II*. *Mitchell II* remains good law, is binding upon this Court, and requires denial of the pending motion to dismiss. The United States' repetitive arguments only serve to confirm that *Arizona v. Navajo Nation* has no adverse effect on the Tribes' claims. The contrast between the Navajo's claims based on implications from treaty language and the Tribes' claims based on specific commands in forestry statutes and regulations highlights the strength of the Tribes' opposition to the motion to dismiss. ECF No. 20 at 11–13.

## II. ARGUMENT

The United States makes three main points, which the Tribes address in turn.

### A. Plaintiffs Rely Upon the Same Statutes and Regulations Found to Create Money-Mandating Duties in *Mitchell II*, in addition to NIFRMA.

1

The United States first argues that *Arizona v. Navajo Nation* "undercuts Plaintiff's reliance on *United States v. Mitchell*, 463 U.S. 206 (1983) ("*Mitchell II*"), rather than statutes or regulations, to establish the specific duties Plaintiff asserts here — breach of duty for fuels management, fire prevention, forest roads, fire suppression, or post-fire rehabilitation." US Supp. Brief at 2. This argument mischaracterizes the Tribes' position. The Tribes do not rely upon *Mitchell II* as a common law basis for a money-mandating claim for breach of trust. Rather, the Tribes expressly rely upon the very same statutes and regulations that the Supreme Court found in *Mitchell II* created specific fiduciary duties that give rise to claims for money damages. *See* Complaint, ECF No. 1 at ¶¶ 28, 30. In addition, the Tribes rely upon the specific statutory duties set forth in NIFRMA. *Id.* at ¶ 29. In NIFRMA, Congress understood that the *Mitchell* line of cases had recognized a money-mandating duty for forest management based on forestry statutes and regulations, and confirmed and specified those duties to improve management and facilitate enforcement by tribes.

The United States then reveals that its actual argument is with the *Mitchell II* decision itself. The United States asserts that:

> *Arizona* makes abundantly clear, however, that trust duties must be explicitly stated in substantive sources of law; courts cannot infer judicially enforceable duties from either the general trust relationship between the United States and Indian tribes or from the United States' 'control' over a tribal resource. 143 S. Ct. at 1813–15. Thus, Plaintiff cannot rely on *Mitchell II*'s finding that the United States has 'comprehensive' control over Indian timber to establish jurisdiction here.

US Supp. Brief at 2.

This argument is flawed for many reasons. First, *Arizona v. Navajo Nation* did not overrule *Mitchell II*. If the Court wanted to take the radical step of overturning *Mitchell II*, a seminal case which has been affirmatively cited thousands of times over decades of jurisprudence, it would have

2

said as much.  Implicit overruling of a prior decision is heavily disfavored.  *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."); *United States v. Obaid*, 971 F.3d 1095, 1102 (9th Cir. 2020) (citing *Shalala*, 529 U.S. at 18) ("We should not assume that the Supreme Court has implicitly overruled its precedent.").  *Mitchell II* remains good law and remains controlling with respect to the United States' motion to dismiss.  As explained by the Supreme Court, courts should not conclude its more recent cases have, by implication, overruled an earlier precedent. Rather, lower courts "should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)).

Second, the United States' critique of *Mitchell II* is unfounded.  The United States isolates one sentence from *Mitchell II* which references "comprehensive control."  However, this statement about the statutory and regulatory control over forest management was a secondary, supporting aspect of the Court's analysis.  In fact, the Court in *Mitchell II* relied upon the same legal standard and analysis that continues today—that "the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Mitchell II*, 463 U.S. at 216–17 (citations omitted).  This analytical framework is consistent throughout Supreme Court Indian Tucker Act jurisprudence and remains valid.  In *United States v. Navajo Nation*, 537 U.S. 488, 493 (2003) ("*Navajo II*"), the majority starts its analysis by explaining that "[t]his Court's decisions in *United States v. Mitchell*, 445 U.S. 535, 100 S. Ct. 1349, 63 L.Ed.2d 607 (1980) (Mitchell I), and *United States v. Mitchell*, 463 U.S. 206, 103 S. Ct. 2961, 77 L.Ed.2d 580 (1983) (Mitchell II), control this case."  The Court further explained the holding of *Mitchell II* in detail and held that "[t]o state a claim cognizable

3

under the Indian Tucker Act, *Mitchell I* and *Mitchell II* thus instruct, a Tribe must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." *Navajo II*, 537 U.S. at 506. Contrary to the United States' arguments in this case, this same approach is employed in *Arizona v. Navajo Nation*, in which the Court cites *Navajo II* and *Mitchell I*, 445 U.S. 535 (1980) for the proposition that "the Tribe must establish, among other things, that the text of a treaty, statute, or regulation imposed certain duties on the United States." 143 S. Ct. 1804, 1813 (2023).

Building upon this legal standard, the Court in *Mitchell II* analyzed the statutes and regulations governing the United States' forest management on an Indian reservation. The Court's primary analysis was as follows:

> The language of these statutory and regulatory provisions directly supports the existence of a fiduciary relationship. For example, § 8 of the 1910 Act, as amended, expressly mandates that sales of timber from Indian trust lands be based upon the Secretary's consideration of "the needs and best interests of the Indian owner and his heirs" and that proceeds from such sales be paid to owners "or disposed of for their benefit." 25 U.S.C. § 406(a). Similarly, even in its earliest regulations, the Government recognized its duties in "managing the Indian forests so as to obtain the greatest revenue for the Indians consistent with a proper protection and improvement of the forests." Office of Indian Affairs, Regulations and Instructions for Officers in Charge of Forests on Indian Reservations 4 (1911). Thus, the Government has "expressed a firm desire that the Tribe should retain the benefits derived from the harvesting and sale of reservation timber."

*Mitchell II*, 463 U.S. at 224–25 (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 149 (1980)). The Court analyzed the statutes and regulations at issue, the very same statutes and regulations relied upon by the Tribes in their complaint and briefing here, and found that they were substantive sources of law creating a money-mandating duty. That analysis is consistent with *Arizona v. Navajo Nation* and the Tribes' briefing in this case, and remains correct.

The "comprehensive control" language from *Mitchell II* referenced by the United States provided additional support: "**Moreover**, a fiduciary relationship necessarily arises when the

4

Government assumes such elaborate control over forests and property belonging to Indians." *Mitchell II*, 463 U.S. at 225 (emphasis added). However, this control was based on substantive statutory and regulatory authority and was not the primary basis for the Court's decision.

The United States' criticism of *Mitchell II* is misplaced and of no consequence here.

> **B.** *Arizona v. Navajo* **Does Not Alter the Legal Standard for Establishing Trust Duties.**

The United States extends its argument further to contend that, because *Mitchell II* is allegedly wrong, the long string of decisions applying *Mitchell II* must be wrong as well. The United States argues that "Plaintiff's reliance on the Court of Claims' decisions in *Blackfeet Tribe of the Blackfeet Reservation* and *Confederated Tribes & Bands of the Yakama Nation v. United States* is misplaced… In *Yakama*, the court relied on *Mitchell II* and the government's 'comprehensive control over the management and harvesting of timber on Indian reservations.' 153 Fed. Cl. 676, 695 (2021). *Arizona* confirms that this is insufficient." US Supp. Brief at 3–4. The United States does not address the other forestry cases cited by the Tribes in which the Federal Circuit and this Court found money mandating duties based on *Mitchell II* and the statutes and regulations cited therein. *See, e.g.*, *Confederated Tribes of the Warm Springs Reservation v. United States*, 248 F.3d 1365, 1370–71 (Fed. Cir. 2001); *Apache Tribe of Mescalero Reservation v. United States*, 43 Fed. Cl. 155, 162–63 (1999); *Navajo Tribe of Indians v. United States*, 9 Cl. Ct. 336, 344–45 (1986).

As explained above, *Mitchell II* remains good law and is in keeping with the analytical framework applied in later cases, including *Navajo II* and *Arizona v. Navajo Nation*. The cases that rely upon *Mitchell II* also remain valid. Indeed, both *Blackfeet* and *Yakama* begin and end their analyses with the forestry statutes and regulations themselves, not comprehensive control. *Blackfeet Tribe,* ECF No. 11-1 at 2–3; *Yakama Nation,* 153 Fed. Cl. at 697–703. For the United

5

States to be correct, an entire field of jurisprudence relating to the United States' management of Indian forests would have to be wrong based on the implication of *Arizona v. Navajo Nation*, an unrelated case concerning treaty water rights. This contention is implausible.

### C. NIFRMA Confirms and Specifies the United States' Fiduciary Duties.

Finally, the U.S. asserts that *"Arizona* also undercuts Plaintiff's argument that the National Indian Forest Management Act (NIFRMA), 25 U.S.C. §§ 3101 et seq. can serve as the basis for enforceable trust duties." US Supp. Brief at 4. Based on the standard savings clause in NIFRMA, 25 U.S.C. § 3120, the United States asserts that "NIFRMA therefore cannot establish new enforceable trust duties because the United States explicitly *did not* accept the provisions detailed in the statute as enforceable trust duties. Thus, NIFRMA does not provide a valid jurisdictional basis here. Plaintiff therefore must point to a different statute or regulation establishing the trust duties it asserts. It has not done so." *Id.* at 5 (emphasis in original).

The United States is wrong. When NIFRMA was passed in 1990 there were already enforceable trust duties encompassing the wide scope of forest management. 25 U.S.C. § 3101(2). Congress was acutely aware of *Mitchell II*, and knew that the Supreme Court had found that existing statutes and detailed regulations set forth at 25 C.F.R. § 163 imposed money-mandating trust duties on the United States. Unfortunately, as reflected in Congressional reports and hearings, Congress determined that the United States continued to breach its duties with respect to forest management. From that context, Congress passed NIFRMA to confirm and specify those duties, because existing "Federal laws do not sufficiently assure the adequate and necessary trust management of Indian forest lands." 25 U.S.C. § 3101(3). NIFRMA did not repeal or replace the authorities identified in *Mitchell II*. Instead, it clarified the United States' obligations in an increasingly technical field. For example, 25 U.S.C. § 407 requires that "the timber on unallotted

6

trust land in Indian reservations or on other land held in trust for tribes may be sold in accordance with the principles of sustained-yield management."  Sustained-yield management is the foundation of modern forestry and stands for the wide variety of actions that are necessary to manage forestlands to provide a continued source of revenue over time.  *See* 25 C.F.R. § 163.1 ("*Sustained yield* means the yield of forest products that a forest can produce continuously at a given intensity of management").  NIFRMA built upon this core requirement to specify the steps necessary to fulfill the United States' trust duties, such as development of forest management plans with specific management objectives.  25 U.S.C. § 3104(b).

The stated purpose of NIFRMA was to "allow the Secretary of the Interior to take part in the management of Indian forest lands, with the participation of the lands' beneficial owners, in a manner consistent with the Secretary's trust responsibility and with the objectives of the beneficial owners."  25 U.S.C. § 3102(1).  The Senate Report states that "[c]onsistent with prior Acts of Congress and the Supreme Court's decision in *Mitchell II*, the Committee amendment finds that the 15,990,000 acres of Indian forest lands…are a perpetually renewable and manageable resource for which the United States has a trust responsibility."  *See* S. Rpt. 101-402 at 6 (101st Cong., 2d Sess. 1990).  The House Report describes *Mitchell II*, stating that "the Supreme Court affirmed the ruling of the Court of Claims. *United States v. Mitchell*, 463 U.S. 206 (1983) (*Mitchell II*), In doing so, the Court found that by enacting 25 U.S.C. 406, 407 and 466, inter alia, the Congress had recognized a federal trust responsibility for the management of Indian forest resources," and then extensively quoted the case.  H. Rpt. 101-835 at 13 (101st Cong., 2d Sess. 1990). The House Report then explained that "Congressional oversight hearings in the last Congress revealed that the United States has not fully carried out its trust responsibilities as noted in the *Mitchell* cases." *Id.*  The House Report then explains the basis of NIFRMA: "S. 1289 responds to these findings by

providing a comprehensive statutory basis for the state of the art management of Indian forest resources by the Indian tribes and the Bureau of Indian Affairs in the Department of the Interior." *Id.* at 14.

In short, prior to NIFRMA the United States' trust responsibility to manage forests on Indian reservations had already been created by Congress and recognized by the Supreme Court, and NIFRMA provided detail and clarity with respect to those duties.  The Congressional intent to confirm and detail the enforceable duties of the United States through passage of NIFRMA is exceedingly clear, both from the text of the statute and the legislative history.  Nothing in *Arizona v. Navajo Nation* can or does change NIFRMA or Congressional intent.

Finally, the United States' argument that NIFRMA cannot support the Tribes' claims has no merit because it completely ignores that, in addition to statutory authority, the Tribes rely upon the regulations promulgated at 25 C.F.R. § 163 as the basis of the breach of trust claim.  As recognized in *Arizona v. Navajo Nation*, regulations may form the substantive law that is the basis for a viable breach of trust claim.  143 S. Ct. at 1813.

In *Mitchell II*, the Court recognized duties based on the forestry regulations set forth at 25 C.F.R. § 163 (1982).  These regulations "required the preservation of Indian forest lands in a perpetually productive state, forbade the clear-cutting of large contiguous areas, called for the development of long-term working plans for all major reservations, required adequate provision for new growth when mature timber was removed, and required the regulation of run-off and the minimization of erosion." *Mitchell II*, 463 U.S. at 221–22.  This "regulatory scheme was designed to assure that the Indians receive the benefit of whatever profit the forest is capable of yielding." *Id.* (citation omitted).  These regulations flesh out the direction in 25 U.S.C. §§ 406, 407, and 466, and continue to provide a basis for the Tribes' claims.

8

The Department of the Interior updated the regulations in 1995 following the passage of NIFRMA, explaining that "[t]he purpose of this rulemaking action is to revise the General Forestry Regulations to implement the provisions of the National Indian Forest Resources Management Act enacted November 28, 1990," and that "[t]he National Indian Forest Resources Management Act reaffirmed many aspects of the existing Indian forestry program." 60 Fed. Reg. 52250 (1995). The continuing statutory authority for the revised regulations included several of the statutes relied upon in *Mitchell II*, plus NIFRMA: "25 U.S.C. 2, 5, 9, 13, 406, 407, 413, 415, 466; and 3101-3120." *Id.* at 52260. The United States did not change the legal effect of the regulations in 1995 so as to make them not give rise to enforceable trust duties, and there is no indication of any intent to do so.

The current regulations impose duties that form a basis of the Tribes' claims, including the requirement that "[t]he Secretary shall undertake forest land management activities on Indian forest land," 25 C.F.R. § 163.10(a), and the definition of such forest land management activities including "[p]rotection against losses from wildfire, including acquisition and maintenance of fire fighting equipment and fire detection systems, construction of fire breaks, hazard reduction, prescribed burning, and the development of cooperative wildfire management agreements." 25 C.F.R. § 163.1. The regulations, like both 25 U.S.C. § 407 and NIFRMA, are provisions of substantive law which require that the United States manage Indian forests in a perpetually productive state in accordance with the principles of sustained yield. 25 C.F.R. § 163.10(b), 25 C.F.R. § 163.3(b)(1). They are focused on the financial return on the Tribes' resources and are money-mandating. Accordingly, 25 C.F.R. part 163 provides a well-established basis for the Tribes' claims. *See Mitchell II*, 463 U.S. at 228 ("We thus conclude that the statutes and regulations at issue here can fairly be interpreted as mandating compensation by the Federal

9

Government for violations of its fiduciary responsibilities in the management of Indian property").

The Tribes' complaint relies on the same statutes cited in *Mitchell II* and later recognized by Congress as creating enforceable fiduciary duties with respect to forest management. The Tribes additionally relies upon NIFRMA and the updated regulations at 25 C.F.R. § 163. As demonstrated by the text of NIFRMA, legislative history, and the federal register notice accompanying the 1995 update to 25 C.F.R. § 163, the regulations were updated based on the authority in the statutes cited in *Mitchell II* and NIFRMA. Thus, there is a direct line from the statutes cited in *Mitchell II* and the modern regulations that help form the basis of the Tribes' complaint.

### III.   CONCLUSION

*Arizona v. Navajo Nation* applied existing legal standards and did not change controlling law. The pending motion to dismiss should be denied.

Respectfully submitted on this 21st day of August, 2023.

*/s/ Brian W. Chestnut*
Brian W. Chestnut
ZIONTZ CHESTNUT
2101 4th Avenue, Suite 1230
Seattle, WA 98121
Tel. (206) 448-1230
Fax (206) 448-0962
bchestnut@ziontzchestnut.com
*Attorney of Record for Plaintiff*

*Of Counsel:*
Wyatt Golding
ZIONTZ CHESTNUT
2101 4th Avenue, Suite 1230
Seattle, WA 98121
Tel. (206) 448-1230
Fax (206) 448-0962
wgolding@ziontzchestnut.com

*Of Counsel:*
Brian Gunn
Powers Pyles Sutter & Verville PC
1501 M Street, NW
Seventh Floor
Washington, DC 20005
Tel: (202) 466-6550
Fax: (202) 785-1756
brian.gunn@powerslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on August 21, 2023, I used the ECF system and electronically transmitted the foregoing document to the Clerk of the Court for filing and transmittal of a Notice of Electronic Filing to the ECF registrants in this case.

*/s/ Brian W. Chestnut*
BRIAN W. CHESTNUT